UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALBERT GUZMAN,

   Plaintiff,         Case No. 1:13-cv-1128

                Hon. Ellen S. Carmody

v.

COMMISSIONER OF
SOCIAL SECURITY,

   Defendant.
_____/

## **OPINION**

   This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. On January 2, 2014, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #13).

   Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

1

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was born on May 22, 1953.  (Tr. 173).  He successfully completed high school and has no past relevant work experience.  (Tr. 21).  Plaintiff first applied for disability benefits in 1975.  (Tr. 10).  Plaintiff's application was denied and he did not pursue the matter further.  (Tr. 10).  Plaintiff next applied for disability benefits in 1985.  (Tr. 10).  Plaintiff's application was granted based on a finding that Plaintiff was suffering a "broad category for mental retardation, learning disabilities and illiteracy."  (Tr. 10).  Plaintiff's benefits were terminated, however, following his incarceration for cocaine use and sexually assaulting a nine-year old girl. (Tr. 10, 408, 410, 417, 419).

On February 18, 2010, following his release from prison, Plaintiff again applied for disability benefits, alleging that he had been disabled since May 1, 1985, due to anxiety and a head injury. (Tr. 173-76, 220).  Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 67-172).  On April 19, 2012, Plaintiff appeared before ALJ Donna Grit with testimony being offered by Plaintiff, a friend of Plaintiff's, and a vocational expert.  (Tr. 35-66).  In a written decision dated May 3, 2012, the ALJ determined that Plaintiff was not disabled.  (Tr. 10-23).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 1-5).  Plaintiff

subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) adjustment disorder with anxiety and depression; (2) reading, math, and writing disorder; (3) borderline intellectual functioning; (4) personality disorder NOS with paranoid and dependent features; and (5) degenerative changes of the right ankle and bilateral shoulders, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 12-18).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) he cannot walk on uneven ground; (2) he can perform overhead lifting, reaching, and crawling less than frequently; (3) he can understand, carry out, remember, and sustain simple instructions independently; (4) he can make simple work-related judgments and decisions; (5) he can respond appropriately to supervision, co-workers, and work situations; (6) he can deal with changes in a routine work setting, but is limited to working in groups of 15 or less and with no contact with the public. (Tr. 18).

The ALJ found that Plaintiff had no past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on

this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here as the ALJ questioned a vocational expert.

The vocational expert asserted that there existed approximately 10,500 jobs in the state of Michigan, and 117,000 nationally, which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 60-66). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.         **Plaintiff has Waived any Argument Regarding Sentence Six Remand**

As part of his request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ. (Tr. 1-5, 649-705). The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated

that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also*, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff bears the burden of making these showings. *See Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

Plaintiff has not requested that the Court remand this matter for consideration of this evidence. Plaintiff has, therefore, waived any such argument. *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waves any arguments that are not developed"); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived); *Financial Resources Network, Inc. v. Brown & Brown, Inc.*, 2010 WL 4806902 at *30 n.29 (D. Mass., Nov. 18, 2010) (same).

**II.      Section 12.05 of the Listing of Impairments**

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1,

identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Plaintiff argues that he is entitled to relief because the ALJ improperly determined that he does not satisfy Section 12.05 (Mental Retardation) of the Listing. Section 12.05 of the Listing provides, in relevant part, the following:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>> 1. Marked restriction of activities of daily living; or

    2.      Marked difficulties in maintaining social functioning; or

    3.      Marked difficulties in maintaining concentration, persistence or pace; or

    4.      Repeated episodes of decompensation, each of extended duration.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05 (2012).

Specifically, Plaintiff asserts that he satisfies sections 12.05(C) and 12.05(D). Cognitive testing performed in 1966 revealed that Plaintiff possessed a verbal IQ of 74, a performance IQ of 76, and a full-scale IQ of 72. (Tr. 371). Cognitive testing performed in 1970 revealed that Plaintiff possessed a verbal IQ of 72-78, a performance IQ of 79-87, and a full-scale IQ of 74-80. (Tr. 371). Cognitive testing performed on August 6, 2010, revealed that Plaintiff possessed a verbal IQ of 69, a performance IQ of 81, and a full-scale IQ of 73. (Tr. 371). The ALJ recognized that Plaintiff had a single IQ test score between 60-70, thus satisfying one of the requirements articulated in subsections (C) and (D).

Plaintiff must also satisfy, however, the requirements articulated in the introductory paragraph of Section 12.05. 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(A) ("[i]f your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets" section 12.05). Specifically, Plaintiff must establish that he satisfied the "diagnostic description" of mental retardation articulated in the introductory paragraph of Section 12.05. *Cooper v. Commissioner of Social Security*, 217 Fed. Appx. 450, 452 (6th Cir., Feb. 15, 2007); *see also*, *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (to satisfy Section 12.05, the claimant must demonstrate that he experienced deficiencies in

adaptive functioning prior to attaining the age of 22).

While there exists evidence that Plaintiff experienced, and continues to experience, a certain level of cognitive impairment, the record does not support the conclusion that Plaintiff experienced deficiencies in adaptive behavior or suffered from mental retardation prior to the age of 22 or at anytime thereafter. Plaintiff reported that he has several friends with whom he associates and enjoys playing chess, playing billiards, dancing, and riding his bike. (Tr. 440). These activities are inconsistent with a conclusion that Plaintiff suffers from mental retardation or experiences deficiencies in adaptive functioning. *See, e.g., Burrell v. Comm. of Soc. Sec.*, 2000 WL 1827799 at *2 (6th Cir., Dec. 8, 2000). The results of an August 6, 2010 examination revealed that Plaintiff suffered from borderline intellectual functioning and was capable of performing "full time simple unskilled employment." (Tr. 438-46). As the Sixth Circuit has observed, a diagnosis of borderline intellectual functioning is inconsistent with a diagnosis of mental retardation and, therefore, precludes a finding that the requirements of Section 12.05 have been met. *See Cooper*, 217 Fed. Appx. at 452.

The burden rests with Plaintiff to demonstrate that he satisfies the requirements of a listed impairment. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002). The ALJ evaluated the evidence of record and determined that Plaintiff failed to meet his burden in this regard. The ALJ's decision is supported by substantial evidence.

**III.      Dr. Wirth's Opinions**

On April 12, 2012, Dr. K. Kitzsteiner completed a form regarding Plaintiff's "ability to do work-related activities (mental)." (Tr. 635-37). The doctor evaluated Plaintiff's ability in ten

10

categories encompassing: (1) understanding, remembering, and carrying out instructions; (2) interacting appropriately with supervisors, co-workers, and the public; and (3) responding to changes in the routine work setting. (Tr. 635-37). The doctor rated Plaintiff's level of impairment as "extreme" in four categories, "marked" in four categories, "moderate" in one category, and "none" in one category. (Tr. 635-36). Dr. Kitzsteiner also noted, however, that "this is 1st day I've met [patient]." (Tr. 637). The doctor further stated that "all responses" were based on Plaintiff's subjective allegations rather than the result of examination or other assessment. (Tr. 637). Dr. Pamela Wirth later noted on the form that she agreed with Dr. Kitzsteiner's conclusions. (Tr. 640). The ALJ afforded "no weight" to these opinions. (Tr. 21). Plaintiff argues that because Dr. Wirth was his treating physician, the ALJ was required to afford controlling weight to her opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial

medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir.

2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

As the ALJ properly concluded, Dr. Wirth's opinion that Plaintiff suffers from such extreme functional limitations enjoys no support in the record. Treatment records maintained by the Michigan Department of Corrections indicate that Plaintiff, whose GAF score was rated as 69,[2] was able to successfully complete therapy. (Tr. 427, 430). Plaintiff's reported activities are certainly inconsistent with Dr. Wirth's opinions. The contemporaneous treatment notes, completed by Dr. Wirth and others, likewise fail to support Dr. Wirth's opinions. (Tr. 452-83, 531-613). As the ALJ correctly observed, the record suggests that Plaintiff has a serious drinking problem and was participating in therapy and abstaining from alcohol, albeit only occasionally, simply because it was a requirement of his parole. (Tr. 21, 459, 469, 471-77, 499, 552).

As noted above, Dr. Kitzsteiner conceded that his opinions were based on Plaintiff's subjective allegations. There is nothing in the record to suggest that Dr. Wirth's adoption of Dr. Kitzsteiner's opinions was based on any first-hand examination of Plaintiff or any other assessment or evaluation of Plaintiff performed by herself or anybody else. Dr. Wirth offered absolutely no basis or rationale for her decision to adopt such extreme opinions that were based on nothing more than Plaintiff's subjective allegations. In sum, the ALJ's decision to afford less than controlling weight to Dr. Wirth's opinions is supported by substantial evidence.

---

[2] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A score of 69 indicates that the individual is experiencing "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* at 34.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.


Date:  March 10, 2015                                          /s/ Ellen S. Carmody
                                                                              ELLEN S. CARMODY
                                                                              United States Magistrate Judge